22, 1997, Therese M. Waters v. Secretary of Health and Human Services, oral argument not to exceed 15 minutes per side, Mr. Waters for the Plaintiff-Appellant. I ask to reserve five minutes for oral argument. And I will begin by apologizing for not having the same experience before this Court as prior counsel did. This case is as much about Chevron deference as anything else. The District Court's conclusion that enteral formula itself is not a covered benefit, is not a prosthetic device, cannot be reconciled with Section 1834M, which explicitly recognizes enteral formula as a prosthetic device under Section 1935X. The Secretary never acknowledges that the NCD explicitly stated that covered benefits include, quote, nutritional therapy for patients who have a permanently inoperative internal body organ or function thereof, close quote. That exactly describes the beneficiary in this case. The Secretary never identifies where he specifically excluded enteral formula coverage for persons with permanent impairment or offered substantial evidence for doing so. The Secretary never explains why it is appropriate to treat patients who do not use a feeding tube differently than patients who do need a feeding tube when both have a medical necessity, a medical need for enteral formula. The Secretary is in fact treating similarly situated, indeed almost identically situated patients differently without any explanation. In arguing that, he never explains why how his denial is consistent with the Act's coverage of items that are reasonable and necessary to improve the functioning of a malformed body member in one part of the statute or replace all or part of an internal body organ in another part of the statute. In arguing that the feeding tube alone is the prosthetic device and that enteral formula is not, the Secretary is in fact and the District Court is in fact writing enteral formula out of the statute. So as I hear it, your case turns on whether, and I'm calling it the HCU cooler. Is that a generic term that's used for what you're asking for? That is the enteral formula in question. Okay. Turns on whether this HCA cooler is a prosthetic device. Is that really the central question? Yes. And I'm looking at the statute 42 U.S.C. 1395 S.8. Yes. X.S.8. S.8, yeah, which defines or talks about prosthetic devices. So where in that provision, what are you pointing to? What language to say that your, that the HCA cooler would fall within this definition of Well, it's actually that section, your Honor, and section 1935Y. Okay, because both of those sections in both places, one of them deals with enteral formula that is reasonable and necessary to improve the functioning of a malformed body member. And the other one, it deals with prosthetic devices that replace all or part of an internal body organ. And there is simply no dispute that individuals with homocysteine urea, in fact, have a dysfunction of their liver. Okay, but so are you saying that 1935Y just supersedes then the 1395 S.8 discussion of prosthetic device? No, I apologize for interrupting. No, I am not. I am saying they must be read in conjunction with one another. Okay. How can a, basically, is this HCU cooler a pill, basically? No, your Honor, it is an amino acid modified medical formula. It is available only on the prescription of Right, but how does it come? Does it come in pill form or? It comes in a powdered form and it must be mixed, you know, with a liquid. Okay. And to be blunt, Kelly's medical doctor, you know, described it as tasting like vomit. And it does. It has to be mixed with something, you know, to overcome the taste of that powdered formula. Okay, and the applicant, I mean, you know, the daughter, Kelly, takes it four times a day? I do not believe she takes it four times a day. I think it is more like twice a day. Okay, and then I assume the problem gets down to one of, I assume this powder is expensive? The powder is expensive, although the purchasing power of an individual is significantly different than the purchasing power of the United States government. So the $20,000 that Kelly has been charged in this case, you know, will likely be very different if the government were negotiating this. And relevant to that, you know, the occurrence, you know, of this, this is a very rare disorder. It is probably one in 100,000 or one in 200,000. There are perhaps 1,600 or 3,200 patients, you know, in the entire country. And... Twenty thousand, is that per quarter, per month, per year? I'd have to go back and look at the record. That was for more than one purchase. I do remember that from the record. I do not remember the exact number. Have there been any other cases involving whether this is covered by Medicare? Not that I can find, Your Honor. How do you, so how do you, how do you get from the fact that this powder, how does that become a prosthetic device? Because Kelly's liver cannot metabolize the amino acid methionine. Right. And because it cannot metabolize methionine, it cannot produce the amino acid L-cysteine. Both of those are absolutely necessary for life. Right, I understand that this medication, we'll call it, this internal supplement, is vital to her functioning, her living. But if, does the Medicare Act define what a prosthetic device is? Well, actually, the defendant itself, you know, defined it, you know, as something that is reasonable and necessary to improve her functioning. Here's the quote from the Secretary's brief. It recognized, quote, prosthetic devices are defined in the Medicare Act and regulations as devices that replace all or part of an internal body organ. That is straight out of the Secretary's brief. Kelly's formula does just that. It replaces, it omits the methionine that her liver cannot metabolize and it provides the L-cysteine that her liver can therefore not produce. Right, but is it a device? I mean, no. Well, it is an item. You think of a device as like a feeding tube is a device, a colostomy bag is a device. But how is a powder that you can drink a device? It is an item which is covered, you know. The Act doesn't cover just devices, it covers items. It covers categories of benefits. Okay. What provision is that in the 1935Y provision you were talking about? I think that's in the 1934, it's in the 1395X provision. But what Medicare covers, it gives the Secretary the authority to determine what items are included within a category and this is clearly included within the category. It does not, what the Secretary did here is excluded an entire class of beneficiaries. The feeding tube does nothing for Kelly. She does not have a temporary ingestion impairment, you know, that requires the use of a feeding tube. They therefore, what they have done is conditioned this on the use of a feeding tube which is medically unnecessary. Let me ask you, if she were in a condition where she required a feeding tube and she was being given the same HCA cooler through the feeding tube, that would be covered? I mean, at least the HCA system would not be denying that it's covered. It would be, they would not have denied it if we had forced her to insert a feeding tube through her stomach or into her stomach or esophagus, you know, lower intestines and stomach, you know, then they would have covered it. But no doctor would have prescribed that because she doesn't need that. Exactly. The doctor did not prescribe it because she does not need a feeding tube. What she needs is the enteral formula. And indeed, the patients who have the feeding tube need both. They need the feeding tube to get their enteral formula through their esophagus, into their mouth, through their esophagus, into their lower intestines and into their stomach. Okay? They need both, not just the feeding tube. They need the enteral formula as well. Kelly does not need the feeding tube because she does not suffer from a temporary ingestion impairment, which is exactly what the policy article in the NCD dealt with. They otherwise recognized that, you know, nutritional therapy for permanent impairments was a covered benefit. And that is flat out stated, you know, in the national coverage determination. What do you make of, I mean, isn't there a general deference given to agency determinations? Aren't the agencies entitled to some sort of deference there? That is, well, the answer in this case is no. And that is exactly, I think, what the Supreme Court is struggling with, you know, in a number of cases. The deference in this case that they're asking for, they are actually asking for this court to defer to the judgment of a Medicare contractor. This was not an evidence-based national coverage determination. What they relied upon in denying the formula because Kelly takes it orally, you know, that very clear sentence in the Max decision, you know, referred to the policy article. The policy article is an interpretation of the NCD. You know, the NCD in this case was not an evidence-based determination because there is no record evidence of what they considered in issuing it. And indeed, what happened was the policy article is even less of an evidence-based interpretation. Would you like to go into your rebuttal time now or do you have a question? Go ahead. This is a difficult case, one, because there's so many statutes and regulations and national and local determinations for us to look at. I'm an energy lawyer, so I fully agree. That's difficult, too. And also, I mean, we all understand why it would be, as a policy matter, the government might want to pay for this, for the formula. But the section 1395K really talks about services. You know, it's like the government will pay for home care or hospital care or emergency care. It's really talking about service, types of services that the government will provide, not sort of individual medication. And it does include prosthetic devices, which arguably might be more like a service as opposed to a, I'm just struggling with the sense of that section isn't talking about specific, I don't want to say this is medication, but like specific pills or coverage of pills or something. It's talking about sort of a broader provision of services and types of services and is there a concern, and maybe this is a question for the other side, but is there a concern that if we include, if we read the regulations in the statute that you want to be read that there are other types of similar substances that would be also swept in, that the secretary would then also have to recognize as being covered, that are really just sort of standalone medications or formulas or coolers or whatever you want to call it? Well, I will confine my response to this case. During the course of the pendency of this proceeding, the secretary withdrew both the policy article and the national coverage determination, you know, and thereby removed the feeding tube requirement and still continued to cover enteral formula as a benefit, which means that the secretary himself has recognized that the enteral formula itself is a covered benefit because it replaces the function of a malformative. Does Kelly now have coverage? Kelly is, I will answer that question. Kelly is covered currently under Medicaid. She will be disqualified from Medicaid when I retire or die. I have had a liver transplant and I have a limited shelf life. When I die, she will get a survivor's benefit, which will disqualify her from Medicaid, which means that this will be her only source of medical formula. Does the change in rule correspond with the change in administrations? I don't think that had anything to do with the change in administration. I think what happened is they withdrew the policy article and the NCD during the course of this proceeding. And respectfully, I do not think that that was mere serendipity. So she continued as far as Medicare is concerned, she still doesn't qualify for this HCU cooler to be encoded? Well, the problem is more that in this case, okay, she still got a $20,000 obligation that she is on the hook for. But the secretary has now directed his contractors to decide these cases strictly on the basis of medical necessity. So he is covering enteral formula on a medical necessity, on the basis of medical necessity. But candidly, given his, you know, opposition in this case, you know, you wonder whether they're going to go back and pull all the coverage and let, there are 50% of these patients die before the age of 25 if they are not treated. If the secretary thinks that is an appropriate result, he should convene a task force as they did in Heckler v. Ringer and address it directly. Well, these are, I think they're very hard policy questions as I was sort of indicating earlier. But those are probably better directed to a different branch. How old, I'm just curious, how old is Callie now? She's about 30 years old. If I could, before I leave, could I make one additional point? Well, you've reserved five minutes for rebuttal. So you have time to make that in rebuttal. Thank you, Your Honor. Thank you. Good afternoon, Your Honors. May it please the Court. Nicole Mazzocco on behalf of the Secretary of Health and Human Services. I would like to begin by addressing the point that Your Honors were just discussing with opposing counsel, the question of whether or not there has been any coverage change for medical foods like the HCU cooler. There has not been. That has been the Secretary's consistent position for decades and decades, Your Honors, that these types of medical foods are not covered through the prosthetic device provision. The withdrawal of the, I'm sorry, Your Honor. I'm a little confused, though. If you have a prosthetic device, though, these are paid for. Is that right? Oftentimes, yes, Your Honor. You would, of course, have to have that patient run through the particular coverage requirements, and their medical records would have to be proven up. There would be additional technical requirements that would have to be met. But yes, Medicare does cover feeding tubes, and when Medicare is covering a feeding tube, the Secretary has generously interpreted the prosthetic device provision as also including the items necessary to make that device function. But that, to me, suggests kind of an arbitrariness here in that you have to have a tube in order to get it covered, but if you don't have the tube, it's not covered. It just seems very kind of arbitrary to me. I guess you're basing it on what? I mean, what? The statutory language set out by Congress, Your Honor. But it has to be a prosthetic device. Yes. That's what you're hanging your hat on. Exactly, Your Honor. And the rest is like, it doesn't necessarily follow that somehow the HCA cooler suddenly becomes a prosthetic device because it's being delivered through a tube. You're saying somehow that just as a matter of generosity, the Secretary decides the HCA cooler will then be covered if it's being delivered through a tube. It would not be a prosthetic device. So under no formulation is the HCU cooler transferred into becoming a prosthetic device. When the Secretary is covering prosthetic devices like feeding tubes, he is typically covering everything necessary to make that prosthetic device function. So that would include. What Judge Bush says is sort of a strange anomaly because there's no medical benefit from having a feeding tube. I mean, the feeding tube is just a means to get the medication you need, which in this case would be the HCU cooler. So if the feeding tube doesn't add anything except as a way to get what you really need is the cooler, why shouldn't you be able to be covered for the cooler if you don't need the feeding tube? Well, Your Honor, because that is the choice that the Congress has made. Medicare is a defined benefit program with different categories of benefits. Medical necessity alone is not enough for something to receive coverage under Medicare. You must first go through a defined benefit category. Here, the category at issue is the prosthetic device benefit. There is no defined benefit category for medical foods separately, Your Honor. Give me an analogy. Is there any other kind of medical food that's not covered that is important for staying alive? Any kind of a medical food, Your Honor, standing alone would not be covered if consumed orally is my understanding. Something that would be similar would be say insulin or thyroid medication. Something that your body, your pancreas does not produce insulin and so we are adding the insulin in and you need that as a diabetic to survive. That is not a prosthetic device and would also not receive coverage under the prosthetic device defined benefit category. Insulin is covered elsewhere. Now is there, I take it there are separate statutes dealing with, I mean let me ask you this, can a medical food ever be a drug that would be covered by Medicare? I do not know the answer to that, Your Honor. My knowledge of the Medicare statute is not exhaustive. Okay, because it seems to me you would probably have statutory provisions dealing with devices and then you have provisions dealing with drugs because we know Medicare covers drugs. That is Part D, Your Honor, and not at issue in this case. They are not seeking coverage under Part D. Okay. Insulin, you example, that's covered under Part D, I guess. Yeah. I believe so, Your Honor, yes. So we don't, you just don't, you can't answer how this substance would be treated under Part D. I do not know the answer to that, Your Honor, no. But that's not before the court and not part of this case. So what deference, I mean your opposing counsel says you're not, the Secretary's not entitled to any deference here. Well, I would respectfully disagree with that assertion, Your Honor. First, I would like to note that we don't need to get to deference here. But the plain language of the statute solves this case. A food, a drink is not a prosthetic device for the reasons that we've laid out in the brief. So I don't think we need to get to the layers of deference that agencies are given. However, to the extent that Your Honors would find that statutory provision ambiguous, we believe that the NCD at issue here would correctly be entitled to Chevron deference. The statute very clearly places in the Secretary's hands the right to determine what is covered under Medicare and what is not, specifically directs the Secretary to issue NCDs like this, determining coverage nationally. And because of that, we believe that Chevron deference ought to be shown to the NCD, which as you can see from reviewing it, also deals with what is covered in terms of enteral nutrition under the prosthetic device benefit and would clearly exclude the cooler. Are you aware of any other cases involving this type of claim for coverage? No, Your Honor. Are you aware of whether the MAC here, the LCD and the articles, are they consistent with how other MACs treat the NCD? I'm trying to keep on my acronym straight here. Tell me what MAC is. The MAC is the independent contractor that administers... No? Am I getting it wrong? It's the Medicare Appeals Council, Your Honor. Okay. Okay. But it is the initial decision maker as to whether or not... It is not, Your Honor. Oh, it's not. Okay. It is the last decision maker. I'm getting totally confused then. Give me the order of decision makers here. Certainly, Your Honor. I'm going to have to refer to my brief to do that for you  We're reviewing the decision of the MAC. We are. The MAC is the final decision of the agency that the court is reviewing. Okay. But I am happy to... It is in my brief, Your Honor, and I'm happy to pull that up and go through the layers if you would like me to. Okay. Well, maybe I can work my way through it myself. You know, the Medicare Benefits Policy Manual states that, prosthetic devices include enteral nutrition. So we have several responses to that point. Well, that sounds pretty bad for you. Well, I have several responses, Your Honor. So the first one being that the manual is not binding, and so it's not something that governs in this case. The manual is just a document that sort of fills in, in a more colloquial way, what's going on. It's not binding in the way that an NCD is. And then additionally, if you read the manual as a whole, Your Honor, it's contemplating prosthetic devices and enteral food delivery systems. When you read through the whole thing, you can see that what it's talking about is the feeding materials being covered in conjunction with the prosthetic devices. So if you read the manual as a whole, and don't take it out of context, I don't think you'll find that it supports a plaintiff's position, Your Honor. And additionally, again, we don't need to get there because the plain statutory language makes it clear. We're reviewing the MAC, and that decision relied on more than just the statute. So it went to the NDL, NCD, LCD. Don't we have to review the decision, the analysis offered by the agency, essentially? I'm not certain I understand your question, Your Honor, so please correct me if I answer it not in the manner that you were hoping for. We are reviewing the MAC's decision, and I think if you read the MAC's opinion as a whole, it talks about both the statutory language, the NCD, the LCD, and the policy article as all four being in accord. That's one way to read it. And that is how the Secretary would read it. So the LCDs are independent private contractors, right? I'm not trying to trip you up. They're basically private entities. And part of what you point to is guidance documents issued by private entities. That to me sounds like the last thing I want to rely on in terms of statutory interpretation. Quick case. Certainly, Your Honor. I appreciate your point. And I don't think we need to get there because I think we can stop and start with the statutory language. However, I do think it's important. You're reading the MAC as basically there's four related, but at the end of the day, independent. We could just end with the statute. You're reading the MAC as saying you could just do this on the statute, or you could do it working your way down all the way to the LCD. Correct, Your Honor. I don't think you need to get to either the policy article or the LCD. However, I do think it's important that those documents do receive the deference that the Secretary gives them in his regulations. And then also because the statute itself contemplates the issuance of these local coverage determinations. And so Congress is contemplating the relevance of this as well. The only policy document issued by the Secretary is the NCD, correct? I'm struggling with what Your Honor intends by policy document. In terms of agency interpretation of the statute, isn't that just the NCD? In terms of what the Secretary... How the Secretary interprets the statutory language, isn't that embodied in the NCD? It is, yes, Your Honor. And the LCD and articles are private contractors who are interpreting the NCD. Yes. Is that fair to say? That is, Your Honor. So back to my original question, which I was not very good at asking. Maybe I asked it this way. Are the LCDs and articles consistent around the country in interpreting the NCD with respect to this issue? To the best of my knowledge, yes, Your Honor. Although I can't say that I've reviewed them all. But it's my understanding that it is throughout the country. This would not be covered. It would not vary based on where you live. And you're not aware of any other case or instance where there's been an appeal of a denial of coverage of HCU cooler? To the federal court level, no, Your Honor. What about at the agency level? Through the MAC, I don't have that information. Okay. I have one additional point that I wanted to make in relation to the reply brief, Your Honors. So the reply brief states, and I've covered this to a certain extent, but very specifically the reply brief says there was a change in policy in 2014 citing an edit that was made to the NCD in 2014. And there was indeed an edit made to the NCD in 2014. That NCD, along with most other documents under HHS's purview, received a variety of edits in relation to the secretary transitioning from ICD-9 to ICD-10. And they're technical edits in terms of terminology. They're not substantive edits. So nothing in 2014 changed the substance of what is before the court now. And to the extent that the court would like to review the red line of those edits, if this is something the court is interested in, I do have the publicly available website where that edit is offered. And I'm happy to read it out. One more question. When I was asking you about the NCD being issued by the secretary, it looks like the Medicare benefit policy manual is also issued by the secretary. Is that correct? It is, Your Honor. But it is not a binding document. So it does not purport to be an authoritative interpretation of the statute? I would not ask for Chevron deference for the policy manual, Your Honor, which is, I think, what you're getting at. Okay. Seems like a kind of tough case in a way. I mean, you know, one sense easy if, hey, the statute doesn't cover, has to be a prosthetic device, this isn't a prosthetic device. Yet the sort of what's being denied seems pretty bad. And you can only cite insulin, which is a covered drug, which I doubt this is. So you don't really have a comparable orally taken medication that seems quite comparable to this HCU cooler that's being denied coverage where you have no feeding tube or prosthetic device to deliver it. So if you have to have it delivered artificially, you're covered. Hey, if you can just swallow it, tough luck. I mean, that's sort of what it sounds like. And, Your Honor, that is an argument best directed to Congress. The Secretary cannot cover everything that a doctor deems necessary to a patient's treatment because of the way Congress has structured Medicare. So to the extent that someone would wish to argue that as a policy matter that medical foods ought to be covered under Medicare, one would have to take that argument to the legislative branch as opposed to the Secretary or this Court. And if the Court has no further questions. Under Part D, are you saying this isn't covered or you don't know whether it's covered? I don't know, Your Honor. Okay. Well, thank you very much. The NCD, pardon me, Section 1834M explicitly recognizes enteral formula as a prosthetic device within Section 1395X. Pardon me, 1395X. It explicitly recognizes enteral formula as a prosthetic device. The Secretary is simply wrong in arguing otherwise. This is thoroughly dealt with in my briefs. The policy manual to respond to Judge Gilman's question, which would not generally be binding, is in fact incorporated into the NCD. It is therefore binding. And it explicitly recognizes both enteral and parenteral formula as a prosthetic device. The one statement nowhere in any of these coverage documents does the Secretary say that he is excluding coverage for enteral formulas for persons with a permanent impairment. And the Secretary's own brief recognizes that specific exclusion is in fact the legal standard. With regard to the one sentence in the policy article that the Appeals Council relied upon, what it did is the policy article extended coverage to persons with temporary impairments. If a person with temporary impairments ceases to suffer from that temporary impairment, his need for enteral formula ceases to exist. And the policy article then made clear that it was excluding regular foods and oral supplements. Kelly's enteral formula is not, Kelly cannot eat regular foods because she cannot metabolize the proteins in those regular foods. It is also not a supplement. It is instead of her other protein, it is not in addition to. So this enteral formula is statutorily defined as a covered benefit. And it is recognized as such in both the NCD and in the policy manual which the NCD incorporates. The Secretary respectfully is simply wrong. Have you explored how this is covered, whether it's covered under Part D? I can answer that question generally. These enteral formulas are a very, there's only a small amount of them that are produced. The FDA basically excluded them from the typical drug approval process because there are not enough recipients who need this to be able to justify the expense of carrying through it. So unfortunately, and what Congress did is therefore accepted it from what would otherwise be recognized as a prescription drug. And that is why it is regulated under the Orphan Drug Act. But it is still only available on the physician's prescription. The NCD did not require, I'm going to deal with a couple of things very quickly here. The NCD did not require the plaintiff to specifically identify the affected body organ in lay terms. That was one of the arguments in the Secretary's brief. It only required the plaintiff to submit sufficient medical documentation to permit an independent conclusion that the patient's condition meets the requirements of the prosthetic device. That independent conclusion was conducted by the Secretary's own clinical panel which consisted of both a clinician and a physician who only concluded that Kelly's formula was not taken through a feeding tube. It did not include or conclude that it was not medical necessary or that it was not treating a dysfunction of a liver. The conclusion of the MAC that there is no record evidence supporting that this is Kelly's liver is actually unsupported by the record evidence in this case. The record evidence in this case is that it got submitted to the independent panel. That consisted of, among other things, a medical doctor who would have understood inborn error of metabolism, would have understood that proteins and their amino acids are metabolized in the liver and did not find either that this was not necessary or that it was not a dysfunction of Kelly's liver. Before you sit down, I don't want to interrupt you, but you started off by referencing section 1834. 1864M. 1864M. There's so many sections. 1864M deals with special payment provisions with some items. And it explicitly, and what it says is we are including, we are issuing special payment provisions for prosthetic devices. And the term prosthetic devices has the same meaning as under section 1395X, except it does not include enteral formula. So it accepts enteral formula out of the special payment provisions, but otherwise recognizes that it is included within section 1395X. It is statutorily defined as a prosthetic device. Okay. Thank you. Thank you. We will take the case under submission. The court may call the next case.